IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL NO. |
| DURO TEXTILES LLC, | ) ) | |
| Defendant. | ) ) ) | |

## **COMPLAINT**

1.      This is a civil action for penalties and injunctive relief against Duro Textiles, LLC ("Duro" or "Defendant"), pursuant to Sections 309(b) and 309(d) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and 1319(d), and Sections 113(a)(1) and 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7413(a)(1) and 7413(b), for violations of CWA and CAA statutory, regulatory, and permit requirements.

2.      The claims arise from Duro's operations at several textile finishing plants in Fall River, Massachusetts. Duro failed to comply with CWA requirements by repeatedly violating Duro's high and low pH limits for industrial wastewater discharges, and by failing to routinely inspect potential sources of storm water contamination. Duro failed to comply with CAA requirements by failing to maintain minimum temperatures in an air pollutant-controlling incinerator, and by failing to keep certain records.

3.      This Court has jurisdiction over the subject matter of this action pursuant to Sections 309(b) of the CWA, 33 U.S.C. §§ 1319(b); Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and 28 U.S.C. §§ 1331, 1345, and 1355.

4.     Venue is proper in this district pursuant to Sections 309(b) of the CWA, 33 U.S.C. §§ 1319(b); Section 113(b) of the CAA, 42 U.S.C. § 7413(b); 28 U.S.C. § 1391; and 28 U.S.C. § 1395.

5.     Notice of the commencement of this civil judicial action has been given to the Commonwealth of Massachusetts pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## DEFENDANT

6.     Duro is a limited liability corporation organized in Delaware.

7.     Duro currently owns and operates three textile finishing facilities in the City of Fall River, Massachusetts: the Duro Finishing plant, located at 110 Chace Street; Duro Plant 2 (a/k/a Pioneer Finishing), at One Middle Street; and the Duro Textile Printers ("DTP") plant, at 206 Globe Mills Avenue. Until 2004, Duro also operated two other plants in Fall River: the Bayside Laminating plant, located at 848 Airport Road, and the Stedro (a/k/a Stedro Textile) plant, at 100 Globe Mills Avenue.

8.     Duro is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5); Section 302(e) of the CAA, 42 U.S.C. § 7602(e); and 310 Code of Massachusetts Regulations ("CMR") § 7.00.

9.     Duro introduces "pollutants" as defined in Section 502(6) of the CWA, 33 U.S.C. § 1362(6), from its plants into the wastewater treatment works owned and operated by the City of Fall River, publicly owned treatment works ("POTW") as defined in 40 C.F.R. § 403.3(o).

10.     Duro is a corporate successor to Duro Industries, Inc. ("Duro Industries"), a Massachusetts corporation that operated the above-listed textile facilities until October 2002.

- 2 -

## CLEAN WATER ACT ("CWA") CLAIMS

### CWA Statutory and Regulatory Authority

11.     Section 307(d) of the CWA, 33 U.S.C. § 1317(d), makes it unlawful for any owner or operator of any source to operate in violation of any pretreatment standards promulgated under Section 307 of the CWA, 33 U.S.C. § 1317.  Pursuant to Sections 307(b) and (c) of the CWA, 33 U.S.C. §§ 1317(b) and (c), EPA has promulgated pretreatment regulations regarding discharges to POTWs.

12.     Sections 402(a)(3) and (b)(8) of the CWA, 33 U.S.C. §§ 1342(a)(3) and (b)(8), require POTWs receiving pollutants from significant industrial sources subject to Section 307(b) standards to establish their own pretreatment programs to insure compliance with these standards.  Upon EPA approval, the requirements of a POTW's pretreatment program become directly enforceable under Section 309(d) of the CWA, 33 U.S.C. § 1319(d).

13.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters except in compliance with, among other things, national pollutant discharge elimination system ("NPDES") permits issued under Section 402 of the CWA, 33 U.S.C. § 1342.

14.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of pollutants" to include "any addition of any pollutant to navigable waters from any point source."  Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines a "point source" as "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

15.     Section 402(p)(2)(B) of the CWA, 33 U.S.C. 1342(p)(2)(B), requires any storm water discharge associated with "industrial activity" to be authorized by a NPDES permit.

16.     Section 308(a) of the CWA, 33 U.S.C. § 1318(a), authorizes EPA to require the

- 3 -

owner or operator of any point source to provide such information as EPA may reasonably require to carry out the objectives of the CWA, including the issuance of NPDES permits pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17.     Pursuant to Sections 308 and 402(p) of the CWA, 33 U.S.C. §§ 1318 and 1342(p), EPA promulgated regulations relating to the control of storm water, at 40 C.F.R. § 122.26.

18.     Forty C.F.R. § 122.26(b)(14)(xi) defines "storm water discharge associated with industrial activity" to include discharges from facilities classified as Standard Industrial Classification ("SIC") 22, which includes SIC 2211-2269 for textile mill products.

19.     Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), authorize EPA to initiate a civil judicial enforcement action for injunctive relief and penalties against any person who violates, among other things, Sections 301 or 307 of the CWA, any permit condition or limitation implementing Section 301 in a permit issued under Section 402 of the CWA, or any requirement imposed in a pretreatment program approved under Sections 402(a)(3) or 402(b)(8) of the CWA.  Violators are subject to civil penalties of up to $25,000 per day for each violation.

20.     The Debt Collection Improvement Act ("DCIA"), 31 U.S.C. § 3701, and its implementing regulations set forth at 40 C.F.R. Part 19, provide for various increases in the maximum authorized civil penalties for CWA violations that occur on or after January 30, 1997. Taken together, the CWA, the DCIA and DCIA's implementing regulations authorize civil penalties of up to $27,500 per day for CWA violations occurring between January 30, 1997 and March 15, 2004, and up to $32,500 per day for violations occurring after March 15, 2004.

### First CWA Claim for Relief:  National Prohibited Discharge Standards for pH

21.     EPA's pretreatment regulations governing discharges to POTWs are part of EPA's General Pretreatment Regulations for Existing and New Sources of Pollution, set forth at

- 4 -

40 C.F.R. Part 403. At all times relevant to this Complaint, EPA's pretreatment regulations at 40 C.F.R. § 403.5(b)(2) have contained a specific prohibition on discharges with a pH lower than 5.0 from non-domestic sources into a POTW.

22.     At various times beginning in 1999, the Duro Finishing plant has introduced into the Fall River POTW discharges with a pH that violated the National Prohibited Discharge Standards for pH set forth at 40 C.F.R. § 403.5(b)(2), and thus violated Section 307(d) of the CWA, 33 U.S.C. § 1317(d).

23.     At various times beginning in 1999, Duro Plant 2 has introduced into the Fall River POTW discharges with a pH that violated the National Prohibited Discharge Standards for pH set forth at 40 C.F.R. § 403.5(b)(2), and thus violated Section 307(d) of the CWA, 33 U.S.C. § 1317(d).

24.     At various times beginning in 1999, the Duro DTP plant has introduced into the Fall River POTW discharges with a pH that violated the National Prohibited Discharge Standards for pH set forth at 40 C.F.R. § 403.5(b)(2), and thus violated Section 307(d) of the CWA, 33 U.S.C. § 1317(d).

25.     At various times beginning in 1999 and ending no later than in 2004, the Stedro plant introduced into the Fall River POTW discharges with a pH that violated the National Prohibited Discharge Standards for pH set forth at 40 C.F.R. § 403.5(b)(2), and thus violated Section 307(d) of the CWA, 33 U.S.C. § 1317(d).

**Second CWA Claim for Relief: Violations of Fall River's Local Limits for pH**

26.     Fall River developed and now implements a local pretreatment program pursuant to 40 C.F.R. § 403.8. EPA first approved Fall River's pretreatment program on September 28, 1983. As part of its pretreatment program, Fall River developed specific local limitations in

accordance with 40 C.F.R. § 403.5(c).

27.     Fall River's local limitations regulate the pollutants that a source can discharge into the POTW. Fall River specifically regulates the pH of discharges to the POTW.

28.     Fall River's local limitations are set forth in Chapter 74 of the Revised Ordinances of Fall River ("Fall River Ordinances") (Previously, these limits were set forth at Chapters 19 and 26 of the Fall River Ordinances).

29.     Duro's facilities are subject to Fall River's local limitations set forth in the Fall River Ordinances. At all times relevant to the Complaint, the City of Fall River prohibited discharges with a pH lower than 5.5. From 1996 until March 2005, the City of Fall River prohibited discharges with a pH higher than 10.5. These low and high pH limits have been included in five-year wastewater treatment permits issued by Fall River in 1996 and 2002 to the Duro Finishing plant, Pioneer Finishing (i.e. Duro Plant 2), the DTP plant, and the Stedro plant. On March 29, 2005, EPA approved various modifications to Fall River's POTW pretreatment program, including the raising of Fall River's upper pH limit to 11.5.

30.     Fall River's pH limitations are requirements imposed in a pretreatment program approved under Section 402(a)(3) of the CWA, 33 U.S.C. § 1342(a)(3).

31.     Pursuant to 40 C.F.R. § 403.5(d), Fall River's local limitations are deemed pretreatment standards for purposes of Section 307(d) of the CWA, 33 U.S.C. § 1317(d). Section 307(d) of the CWA prohibits the operation of any source in violation of any applicable pretreatment standard. In addition, pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), the United States may seek civil penalties for violation of any requirement imposed in a local pretreatment program approved under Section 402(a)(3) of the CWA, 33 U.S.C. § 1342(a)(3).

32.     At various times beginning in 1999, the Duro Finishing plant has violated Fall

- 6 -

River's local effluent limitations for pH.

33.     At various times beginning in 1999, Duro Plant 2 has violated Fall River's local effluent limitations for pH.

34.     At various times beginning in 1999, the DTP plant has violated Fall River's local effluent limitations for pH.

35.     At various times beginning in 1999 and ending no later than until in 2004, the Stedro plant violated Fall River's local effluent limitations for pH.

36.     The Duro plants' violations of the Fall River pH limitations violated Section 307(d) of the CWA, 33 U.S.C. § 1317(d), and requirements imposed in a pretreatment program approved under Section 402(a)(3) of the CWA, 33 U.S.C. § 1342(a)(3).

**Third CWA Claim for Relief: Failure to Comply with NPDES Permit**

37.     On October 30, 2000, EPA issued the "Final Reissuance of National Pollutant Discharge Elimination System Storm Water Multi-Sector General Permit for Industrial Activities" ("2000 Storm Water Multi-Sector Permit"), which was effective on the date of issuance. 65 Fed. Reg. 64746 (October 30, 2000). The 2000 Storm Water Multi-Sector Permit covered storm water discharges associated with industrial activities for many states, including Massachusetts.

38.     The 2000 Storm Water Multi-Sector Permit expired at midnight on October 30, 2005; however, facilities that obtained coverage under the 2000 Storm Water Multi-Sector Permit prior to its expiration were granted an administrative continuance of permit coverage.

39.     The 2000 Storm Water Multi-Sector Permit applied to various industrial sectors, including "Sector V: Textile mills, Apparel, and Other Fabric Product Manufacturing," which specifically includes "textile mill products" under SIC codes 2211 - 2299.

- 7 -

40.    The Duro Finishing, Plant 2, and DTP plants are textile finishing facilities with a
SIC code of 2269.  Until they closed, the Stedro and Bayside plants were also textile finishing
facilities with SIC code 2269.

41.    The Duro Finishing, Plant 2, DTP and Bayside plants were covered under the
2000 Storm Water Multi-Sector permit effective January 29, 2001.

42.    During storm events, Duro has discharged storm water associated with industrial
activity from point sources at its Duro Finishing, Plant 2, and DTP plants into Mount Hope Bay,
which is a water of the United States pursuant to 40 C.F.R. § 122.2, and thereby is a "navigable
water" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).  During storm events until 2004,
Duro discharged storm water associated with industrial activity from point sources at its Bayside
plant into Mount Hope Bay, which is a water of the United States pursuant to 40 C.F.R. § 122.2,
and thereby is a "navigable water" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

43.    The release of storm water associated with industrial activity from these point
sources constitutes a "discharge of pollutants" within the meaning of Section 502(12) of the
CWA, 33 U.S.C. § 1362(12).

44.    The 2000 Storm Water Multi-Sector Permit contains various substantive
inspection, monitoring and evaluation requirements.  Specifically, the Permit requires, among
other things, that Sector V facilities conduct monthly inspections of specified equipment,
activities and areas (Provisions 6.V.2 and 6.V.4.3), and yearly comprehensive site compliance
evaluations (Provision 6.V.4.5.), pursuant to the facility's storm water pollution prevention plan
("SWPPP"), and conduct quarterly visual monitoring of storm water discharges from the
facility's outfalls (Provision 5.1.1.1).  Records of all of these inspections must be kept with the
SWPPP.

- 8 -

45.    At various times from December 2000 to December 2003, the Duro Finishing plant violated the 2000 Storm Water Multi-Sector Permit's inspection, monitoring and/or evaluation requirements.

46.    At various times from December 2000 to December 2003, Duro Plant 2 violated the 2000 Storm Water Multi-Sector Permit's inspection, monitoring and/or evaluation requirements.

47.    At various times from November 2000 to December 2003, the DTP plant violated the 2000 Storm Water Multi-Sector Permit's inspection, monitoring and/or evaluation requirements.

48.    At various times from November 2000 to August 2004, the Bayside plant violated the Storm Water Multi-Sector Permit's inspection, monitoring and/or evaluation requirements.

49.    Duro's discharge of storm water associated with industrial activity from the Duro Finishing, Plant 2, DTP and Bayside plants in violation of the Storm Water Multi-Sector Permit violates the conditions of a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and therefore violates Section 301 of the CWA, 33 U.S.C. § 1311.

## CLEAN AIR ACT ("CAA") CLAIMS

### CAA Enforcement Authority

50.    Section 110(a) of the CAA, 42 U.S.C. § 7410(a), requires each state to prepare a state implementation plan ("SIP") incorporating regulations designed to attain and maintain healthy air quality. A state must submit its SIP and any SIP revisions to EPA for approval. Once EPA has approved a SIP, the federal government may enforce the SIP's requirements and prohibitions and may also enforce any SIP-authorized permits pursuant to CAA Sections 113(a) and (b).

- 9 -

51.     EPA has designated ozone as an ambient air pollutant, and has developed a

national ambient air quality standard ("NAAQS") for ozone.  See 40 C.F.R. § 50.9.  Pursuant to

CAA Section 110, EPA has approved a Massachusetts SIP ("MA SIP") that, among other things,

is designed to attain the ozone NAAQS.

52.     Ozone, a main ingredient in urban smog, forms when VOCs react with oxides of

nitrogen in the presence of sunlight.  To control ozone formation, therefore, EPA and the states

have generally sought to control VOC emissions.  In air permits issued to Duro's plants under

authority of the MA SIP, Massachusetts has required VOC emission control equipment and

recordkeeping.

53.     Sections 113(a) and (b) of the CAA, 42 U.S.C. §§ 7413(a) and (b), provide that

any person who violates any requirement or prohibition of an applicable SIP or SIP permit may

be subject to a federal civil judicial action for injunctive relief and penalties of up to $25,000 per

day for each violation.  As a prerequisite, EPA must issue the person a notice of violation, with a

copy sent to the state where the violations occurred, at least 30 days before the judicial action is

commenced.   EPA issued a notice of violation to Duro of Duro's MA SIP violations, with a

copy to the Commonwealth of Massachusetts, in July 2005.

54.     The DCIA, 31 U.S.C. § 3701, and its implementing regulations set forth at 40

C.F.R. Part 19 provide for various increases in the maximum authorized civil penalties for CAA

violations that occur on or after January 30, 1997.  Taken together, the CAA, the DCIA and

DCIA's implementing regulations authorize civil penalties of up to $27,500 per day for CAA

violations occurring between January 30, 1997 and March 15, 2004, and up to $32,500 per day

for violations occurring after March 15, 2004.

- 10 -

## First CAA Claim for Relief: Failure to Maintain Minimum Incinerator Temperature

55.     The Duro Finishing plant has an incinerator that controls VOC emissions from the plant's two solvent coating lines.  Pursuant to two federally-enforceable state air permits, this incinerator is required to maintain a minimum temperature of 1,400° F degrees whenever the coating lines are in use.

56.     Specifically, the Duro Finishing plant was issued a state air permit ("Coater/Incinerator Permit") on March 30, 1988 for two new solvent coating  lines, identified as Coating Lines #3 and #4, and an associated incinerator for VOC control.  The Coater/Incinerator Permit described the VOC-controlling incinerator as a Wolverine Jetzone thermal incinerator, and required that "the incinerator ... will be maintained at a minimum temperature of 1400° F (degrees Fahrenheit) at all times."  The permit further required that "[o]peration of coating line 3 and 4 shall be interlocked such that the coating process cannot commence until a temperature of 1,400° F is achieved in the incineration chamber."  The Coater/Incinerator Permit (Approval No. 4P87154) was issued under authority of the federally-approved MA SIP version of 310 CMR 7.02, and is a federally-enforceable SIP permit.

57.     The above-described incinerator operation and temperature requirements were repeated in a subsequent state air permit issued on April 10, 1995. This permit identified the Wolverine Jetzone incinerator as the VOC control equipment for Solvent Coating Lines #3 and #4, and specified the incinerator's minimum operating temperature as 1,400° F. The 1995 permit (Approval No. 4P93103) was issued under the federally-approved MA SIP version of 310 CMR 7.02, and is a federally-enforceable SIP permit.

58.     Based on records of incinerator temperature supplied by Duro, from August 2002 through June 2005, the Duro Finishing plant allowed the incinerator's temperature to fall below

- 11 -

1,400° F on numerous occasions. During these violations, the incinerator's minimum temperature was, upon occasion, allowed to drop as low as 400 to 600° F, with the very lowest temperatures below 200° F.

59.     Accordingly, Duro has repeatedly violated federally-enforceable SIP permit requirements that the Duro Finishing plant maintain a minimum temperature of 1,400° F in its VOC-controlling incinerator.

## Second CAA Claim for Relief: Failure to Keep Daily VOC Records

60.     Pursuant to a federally-enforceable state air permit, Duro Plant 2 is required to keep facility–wide daily records of VOC-containing material usage, VOC-containing material quantities mixed, and VOC emissions.

61.     Specifically, Duro Plant 2 was issued a state air permit on August 3, 1993, that provides as follows: "A facility-wide daily record of the VOC containing material usage, quantity mixed, and the amount of VOC emissions shall be maintained. These records shall demonstrate that the approved emission limitations contained in this approval are not exceeded." This 1993 permit (Approval No. 4P93106) was issued under the federally-approved MA SIP version of 310 CMR 7.02, and is a federally-enforceable SIP permit.

62.     Duro has failed to keep daily records of VOC emissions, VOC usage, and VOC quantities mixed for operations at Duro Plant 2. Accordingly, Duro had violated federally-enforceable SIP permit requirements for daily VOC recordkeeping at Duro Plant 2.

## RELIEF SOUGHT

The United States requests that the Court grant the following relief:

1.     Permanently enjoin Duro from discharging wastewater from the Duro Finishing, Plant 2 and DTP plants to the Fall River POTW with a high or low pH in violation of National

- 12 -

Prohibited Discharge Standards or Fall River pH limits;

    2.      Permanently enjoin Duro from operating these plants in violation of EPA's Storm Water Multi-Sector Permit;

    3.      Permanently enjoin Duro from operating its VOC-controlling incinerator at the Duro Finishing plant at a minimum temperature below 1,400 ° F degrees in violation of federally-enforceable state air permit requirements;

    4.      Permanently enjoin Duro from violating VOC recordkeeping requirements contained in any federally-enforceable state air permits or the MA SIP;

    5.      Assess Duro a civil penalty not to exceed $27,500 for each day of each violation of any CWA or CAA statutory, regulatory and permit requirements occurring between January

30, 1997 and March 15, 2004, and up to $32,500 per day for any such violations occurring after

March 15, 2004;

6.   Award the United States all costs and disbursements of this action; and

7.   Grant such other relief as the Court deems just and proper.

Respectfully submitted,

For Plaintiff,

ELLEN MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

MICHAEL J. SULLIVAN
United States Attorney

ANITA JOHNSON
Assistant U.S. Attorney
Moakley United States Courthouse
One Courthouse Way, Suite 9200
Boston, MA  02210
(617)748-3266

OF COUNSEL:

STEVEN J.VIGGIANI
Senior Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Boston, MA 02114